THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
BENJAMIN JACOBS, Appellant.

Argued October 5, 1950; decided November 30, 1950.

*J. Bertram Wegman, Richard J. Burke* and *Myron L. Shapiro* for appellant. A laundry license is not required under section B32–167.0 *et seq.* of the Administrative Code of the City of New York for the operation by a linen supplier of its own laundry for the purpose of washing its own linen, exclusively, performing no other laundry services. (*People* v. *34th St. Hotel Co.*, 158 Misc. 839; *People* v. *Bloom*, 193 N. Y. 1; *Van Zandt's, Inc.*, v. *Department of Labor of State of N. Y.*, 223 App. Div. 478; *People* v. *Benc*, 288 N. Y. 318.)

*Miles F. McDonald, District Attorney* (*Aaron Nussbaum* of counsel), for respondent. I. Appellant's operation of a laundry for the general public, without a license, was in violation of section B32–167.0 of the Administrative Code. II. The case of *People* v. *34th St. Hotel Co.* (160 Misc. 243) has no binding effect upon this court. (*Van Vliet & Place, Inc.*, v. *Gaines*, 249 N. Y. 106; *People* v. *Long Island R. R. Co.*, 194 N. Y. 130; *Matter of Tishman* v. *Sprague*, 293 N. Y. 42; *Matter of Russo* v. *Valentine*, 294 N. Y. 338.)

Conway, J. The defendant was convicted of the offense of conducting a linen supply laundry in violation of section B32–167.0 *et seq.* of article 23 of the Administrative Code of the City of New York, in that he had not procured a laundry license.

The facts are not in dispute. The defendant was the president of Arrow Linen Supply Co., Inc. (hereinafter called Arrow Linen) and was actively engaged in its management. Arrow Linen was in the business of furnishing restaurants, night clubs and bars with a complete laundered linen service consisting of tablecloths, napkins, aprons, coats and pants. The linens remained at all times the exclusive property of Arrow Linen and were supplied to customers on a rental basis. Fresh linens were delivered as frequently as they were needed and the used linens were collected from the customers. After laundering by Arrow Linen the linens were again distributed to its customers.

The business was conducted from a two-story building located in Brooklyn which was fully equipped as a going laundry. Eighteen to twenty persons were employed and three trucks were maintained and operated to deliver and collect the company's linens.

The sole issue raised on this appeal is whether a linen supply service is required to obtain a license in order to operate a laundry devoted exclusively to washing its own linen and performing no other laundry service. The word "laundry" is defined in article 23 of the Administrative Code:

" § B32–167.0 DEFINITION.— Whenever used in this article the word 'laundry' shall mean and include:

" 1. Any place, which is used for the purpose of washing, drying, starching or ironing, *for the general public,* wearing apparel, household linens, or other washable fabrics, or a place used or maintained for the storage, collection or delivery of such articles for such service, or

" 2. Any place maintained by a person dealing in laundry service either as an independent contractor or jobber, or any private laundry maintained or operated in connection with any hotel, restaurant or public institution, whether for the tenants, customers or inmates of the same or otherwise, except a hospital or charitable institution where no charge is made for laundry services."

" § B32–168.0. LICENSE REQUIRED.— It shall be unlawful for any person to establish, maintain, or operate a laundry without a license therefor." (Emphasis supplied.)

The District Attorney contends that Arrow Linen was engaged in the business of laundering " for the general public " as that term is used in subdivision 1 of section B32–167.0 (*supra*). A more reasonable and more accurate construction would lead to the opposite conclusion. As we read the statute Arrow Linen fails to come within its provisions. An establishment engaged in laundering for the general public in the popular and ordinary sense and understanding, is a place to which the public is invited to deliver its soiled clothes and linens to be cleaned and made suitable for further use by those delivering them. Such laundering as Arrow Linen did was limited to its own property. Its services were confined to supplying linens

to a small segment of the public engaged in conducting restaurants, night clubs and bars. (It is conceded by the District Attorney that Arrow Linen does not come within the provisions of subdivision 2 of section B32–167.0).

There is a sound reason for requiring the operator of a laundry to procure a license when he is engaged in the business of laundering property other than his own which does not exist when the laundering is confined to the operator's own property. In the former case the public must be protected against conversion and loss or damage to its property while in the hands of the laundry. In the case at bar loss or damage to the linens through negligence on the part of Arrow Linen would work no hardship on its customers since they have no property interest in the linens while in the hands of Arrow Linen and consequently there is no public interest that needs to be protected. The primary purpose sought to be accomplished by the licensing requirements for laundries, then, is to protect against loss, damage or conversion of property belonging to members of the general public. The Administrative Code makes express provisions for just such situations. It provides (art. 23):

" § B32–171.0. Fee; bond.— a. Prior to the issuance of a laundry license, each applicant therefor shall pay an annual fee and furnish a bond to the commissioner in such amounts as are indicated in the following schedule *  *  *.

" d. Such bonds shall be executed with two or more sureties, or a duly authorized surety company approved by the commissioner, shall be payable to the people of the city of New York, and shall be conditioned for compliance with the provisions of this article, and upon the further condition that the licensee will pay to the city any fine, penalty or other obligation within thirty days of its imposition, or any final judgment recovered by any person dealing or trading with such licensee for the loss or conversion of a laundry bundle or any part thereof, within thirty days from the entry and filing of such judgment."

The only case to reach this court in which was involved a judicial construction of the word " laundry " as used in article 23 of the Administrative Code is *People* v. *Benc* (288 N. Y. 318 [1942]). We there held that an apartment house owner who maintained in the basement an automatic washing machine for

the exclusive use of the tenants of the building was not operating a laundry, within the meaning of the Administrative Code, because it was not for the use of the " general public ". In *People* v. *34th St. Hotel Co.* (160 Misc. 243 [1936]) the Appellate Part of the Court of Special Sessions of the City of New York held that a hotel need not procure a license when the laundering was confined to the hotel's own linens, such as tablecloths, bedsheets and towels which it provided for the use of its guests. The statute then involved was the predecessor to section B32-167.0 of article 23 of the Administrative Code but it differed in no material respect. (Baldwin, Code of Ordinances of the City of New York [1936 ed.], ch. 14, art. 19, § 201.) (See, also, *Van Zandt's Inc.,* v. *Department of Labor of State of N. Y.,* 223 App. Div. 478).

The contention that the licensing statute should be construed as applicable to Arrow Linen, on the ground that supervision of sanitary procedures is necessary to insure that minimum health standards are met, is not cogent. Sanitation requirements are prescribed by the Sanitary Code and the licensing statute adds nothing in that regard. By section 556 of chapter 22 of the New York City Charter, all matters affecting health are within the exclusive jurisdiction of the department of health. Section 561 gives the board of health control of granting, suspending and revoking permits in business activities affecting health. In order to operate residential self-service laundry equipment a permit must be obtained from the board of health. (Sanitary Code, § 336a.) As we have seen in *People* v. *Benc (supra)* we decided that it was not necessary to obtain a license from the department of licenses in order to operate a laundry of that kind. Moreover, diaper laundries are regulated by section 336 of the Sanitary Code and no license is required for that type of service. Restaurants are regulated by section 149 of the Sanitary Code. It is apparent, therefore, that the Sanitary Code is intended to establish sanitary regulations necessary for the protection of the public and that such matters are not within the purview of the licensing statute.

The judgments should be reversed and the complaint dismissed.

LOUGHRAN, Ch. J., LEWIS, DYE and FROESSEL, JJ., concur; DESMOND and FULD, JJ., concur for reversal on the sole ground that the interpretation of this statute arrived at in 1936 in *People* v. *34th St. Hotel Co.* (160 Misc. 243), has been accepted by the public authorities for many years and should not now be disturbed.

Judgments reversed, etc.